## Independent Tug Line v. Albert Jacobson.

1. ACCIDENTS—*Responsibility.*—In order to charge an employer with negligence where an injury is caused by circumstances which neither were nor could be foreseen by any one, he must have had notice of the danger at least long enough before the injury inflicted to have enabled him to form an intelligent opinion as to how the injury might be avoided and apply the means.

2. EMPLOYERS—*Not Insurers.*—An employer is not an insurer of the

safety of his employes.  If the injury is occasioned by a pure accident the employer is not liable.

**Action in Case,** for personal injuries.  Trial in the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding.  Verdict and judgment for plaintiff; appeal by defendant.  Heard in the Branch Appellate Court at the October term, 1898.  Reversed without remanding.  Opinion filed October 27, 1899.

**Statement.**—This is a suit to recover for personal injuries.  Appellee was employed upon a tug boat named the Charnley, belonging to appellant.  His duties as fireman required only part of his time, and he performed other duties as well, including some of the duties of a deck hand—such as the handling of lines and fenders.  January 13, 1896, the date of the alleged injury, the Charnley had in tow a boat named the Trowbridge, which it was employed to lay up to a dock bordering upon the Illinois Central Slip.  In front of this dock a large steamer, the Kallyuga, was lying aground in the slip, between the two docks constituting the sides of the latter.  There was not space enough for the Charnley and its tow to run alongside the dock, side by side between it and the Kallyuga—consequently it was necessary when the tow lost headway to push it in from the stern, and under the lines which fastened the Kallyuga to the dock.  In doing this the cabin of the tow came in contact with these lines, and some one on the steamer loosened them.  They were then picked up by men on the tow, not employes of the appellant, passed over the cabin of the tow and dropped upon its stern.  From here one set of the lines was carried still further back over the Charnley which was pushing its tow in from astern.  Appellee had meanwhile been down below firing, and coming on deck was directed by the captain of the Charnley to take a fender and put it over the stern of the tug, apparently to protect the stern of the tow from injury.  While holding the line attached to the fender, one of the loosened ropes of the steamer was dropped down by the crew of the Trowbridge onto the rail of the latter vessel, which the Charnley was in the meantime pushing forward into her intended berth.

It appears that the stern rail of the Trowbridge was irregular and that pieces were broken out of it. The line thus thrown down by the men in charge of the Trowbridge caught on this broken rail, and was immediately stretched taut by the forward motion of the boat, from which immediately after it slipped off, and striking appellee in the face knocked him down, producing the injury complained of. The sight of one eye was injured, and the central vision destroyed, it is alleged, leaving him in that eye only the peripheral or outside vision.

WM. M. JOHNSON, attorney for appellant.

Where the injury occurs to the workman from pure accident, not occasioned by want of ordinary care by the employer, such employer is not liable. Ill. Steel Co. v. Trafas, 69 Ill. App. 87; Armour v. Ryan, 61 Ill. App. 314.

The master is not required to take better care of his servant than the servant is expected to take of himself. Karr, etc., Co. v. Kroenig, 167 Ill. 560.

If a workman is engaged in service of peril, if the danger belongs to the work itself or to the service in which he engages, he will be held to all the risks which belong to either. Perry v. Marsh, 25 Ala. 659; Baxter v. Roberts, 44 Cal. 187; Indemaur v. Davies, L. R., 2 C. P. 313.

If a servant voluntarily puts himself in place of danger the master is not liable. Felch v. Allen, 98 Mass. 572.

A servant must observe and take such knowledge of dangers as can be attained by observation, and where the service is perilous, the servant must use a high degree of care. C. & E. I. R. R. Co. v. Geary, 110 Ill. 389; Moss v. Johnson, 22 Ill. 642; Chicago, etc., v. Swett, 45 Ill. 201; Ill. C. R. R. Co. v. Swett, 46 Ill. 99.

If a person knowing the hazards of his employment, as the business is conducted, voluntarily engages or continues therein without any promise of the master to do any act to render the same less hazardous, the master will not be liable for any injury he may sustain therein, unless indeed it may be caused by the willful act of the master. Camp Point Mfg.

Co. v. Ballou, 71 Ill. 417, 420; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244; Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Miss. Furnace Co. v. Abend, 107 Ill. 44; Penna. Co. v. Lynch, 90 Ill. 334, and cases there cited; Clark v. C., B. & Q. R. R. Co., 92 Ill. 45; C. & A. R. R. Co. v. Monroe, 85 Ill. 25; Norton v. Volzke, 158 Ill. 408; I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; C. & E. I. R. R. Co. v. Geary, 110 Ill. 389.

DEFREES, BRACE & RITTER and JOHN G. CAMPBELL, attorneys for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The third count of the declaration charges that the appellant negligently and carelessly required the appellee to use a fender for the protection of a vessel then being pushed by appellant's tug between a dock and another vessel standing thirty or forty feet away therefrom, but attached to it by ropes; that the work thus assigned to appellee was contrary to his employment, of a dangerous and hazardous character at the time as the captain knew, and appellee did not know. It is on this count appellee relies for recovery.

In support, apparently, of the theory that the order to appellee to place the fender over the stern of the tug was contrary to his employment and hazardous in its nature at the time, the appellee testified:

"Before the accident I handled the fender at the stern or aft. There is a big difference between putting one over the stern and one over the bow. It is the fireman's duty to take care of the stern of a boat, the lines on the stern, and he handles fenders on the stern when he is told, and if it is necessary."

He testifies, however, that he did handle the line forward "quite a few times." The question was further put to him as follows: "Now, Norway, did you handle fenders over on that tug boat just as often as you were told to?" To which appellee answered, "As often as I was told I did," and he says he thinks that had been the course of business ever since he had been on the boat. He also testifies that

he handled fenders not only on the stern of the tug, but "most anywhere, where the occasion required."

It is evident that there is no essential difference in the character of the act itself, whether appellee was in the habit of using the fender on the stern or on the bow or "most anywhere" as he says. And in view of this evidence given by appellee himself, the claim that the order to throw the fender over the stem was contrary to his employment, or was in and of itself dangerous or hazardous, can not be maintained.

It is claimed in behalf of appellee that he had not the same knowledge of the situation and the danger involved as had the captain of the tug who directed him to put the fender over the bow. Appellee had seen the situation and the lines stretching from the Kallyuga to the dock beneath which the Trowbridge was being placed, before he went below to fire, just previous to the accident. His own testimony is to the effect that he was on the deck half a minute before he was ordered to throw the fender, and he says it must have been a minute that he stood there holding the rope attached to the fender before the accident occurred.

But independently of his own knowledge of the situation, if the appellee is to recover, it must appear affirmatively that there was some negligence on the part of the captain, causing the injury complained of.

We are not referred to any evidence which tends to show that at the time the captain gave the order to appellee to place the fender over the stem of the tug, either he or any one else on board the tug had any occasion to suppose that obedience by the appellee involved any personal risk whatever. The whole testimony tends to show that the catching of the line in the broken rail of the Trowbridge, its momentary tightening and its quick release with the force which caused the injury, neither was nor could be foreseen by any one on the tug. It does not even appear that any one on the tug knew that the rail on the Trowbridge was irregular or broken, or that there was or could be any danger therefrom. It has been repeatedly held that in order to

Independent Tug Line v. Jacobson.

charge one with negligence under such conditions, he must have notice of the danger " at least long enough before the injury inflicted to have enabled him to form an intelligent opinion as to how the injury might be avoided, and apply the means." U. S. Express Co. v. McCluskey, 77 Ill. App. 56–58.

An employer is not an insurer of the safety of his employes. If the injury was occasioned by a pure accident the employer is not liable. Ill. Steel Co. v. Trafas, 69 Ill. App. 87–90.

Appellant's counsel moved at the close of the case, to exclude the evidence from the consideration of the jury, and handed up an instruction in writing which the court was requested to give, directing the jury to find the defendant not guilty. The court refused to so instruct the jury and denied the motion.

We are of opinion that the refusal to so instruct was error. The evidence fails to sustain the charges of negligence in the declaration, and upon the undisputed facts, the appellee has no cause of action.

The judgment of the Circuit Court must be reversed without remanding. Reversed without remanding.